**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.    17-cv-00721-RM-STV
                               17-cv-00976-RM-STV

MARC KOUZMANOFF,

     Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA,

     Defendant,

and

MARC KOUZMANOFF,

     Plaintiff,

v.

THOMSON REUTERS HOLDINGS, INC.,

     Defendant,

___

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
___

Magistrate Judge Scott T. Varholak

     This matter is before the Court on Defendant Thomson Reuters' Motion to Exclude the Testimony of Helen Woodard Pursuant to Fed. R. Civ. P. 26 (the "Motion") [#91], which was referred to this Court [#92]. The Court has considered the Motion and related briefing, arguments made at the August 29, 2018 Motion Hearing, the case file, and the applicable case law. For the following reasons, the Court respectfully **RECOMMENDS**

that the Motion be **GRANTED** and that the Court **EXCLUDE** the testimony of Plaintiff's proposed expert witness, Helen Woodard.[1]

I.   **BACKGROUND**[2]

This case arises out of a dispute over short-term disability benefits between Plaintiff Marc Kouzmanoff and his employer, Defendant Thomson Reuters Holdings, Inc. ("Thomson Reuters"), and the administrator of Thomson Reuters' short-term disability plan, Defendant UNUM Life Insurance Company of America ("UNUM"). [#55 at ¶¶ 2, 4, 22, 46] Plaintiff worked for Thomson Reuters for 30 years, selling legal research services to attorneys. [*Id.* at ¶ 22] Plaintiff's work "involved personal sales presentations to law firms in a highly-competitive market, working on a commission basis to meet his sales quota." [*Id.* at ¶ 23] Plaintiff's position also "involved driving." [*Id.* at ¶ 24]

In 2011, Plaintiff began having difficulty controlling his Type I Diabetes, "with frequent hypoglycemia and wide fluctuations in blood glucose readings." [*Id.* at ¶¶ 25-26] As a result, Plaintiff's physician requested that he reduce his hours and the number of sales presentations he made. [*Id.* at ¶ 28] On March 31, 2016, on doctor's orders, Plaintiff ceased performing certain material and substantial duties of his employment and informed Thomson Reuters that performing those duties "involved a high risk of injury or

---

[1] Although the decision to exclude witness testimony generally is not dispositve of a case, "[a] handful of cases recognize that, in certain unusual circumstances, a ruling that would ordinarily be non-dispositive, may nevertheless be reviewed as a dispositive ruling." *Jama v. City & Cty. of Denver*, 304 F.R.D. 289, 295 (D. Colo. 2014) (collecting cases). In an abundance of caution, this Court therefore issues its determination as a recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1) rather than as an order pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a).
[2] The Court draws factual allegations from the operative complaint—Plaintiff's Amended Complaint [#55]—solely to provide context for the instant Motion.

mortality, due to the inability to control his blood sugars while performing his required tasks at the required, usual and customary level." [*Id.* at ¶¶ 31-32] Plaintiff then made a claim for short-term disability benefits, effective March 31, 2016. [*Id.* at ¶ 33] Plaintiff was placed on unpaid Family Medical Leave Act leave from April 1, 2016 through July 1, 2016. [*Id.* at ¶ 35] From July 1, 2016 through October 6, 2016, Thomson Reuters provided Plaintiff with modified employment that essentially complied with work restrictions suggested by Plaintiff's doctor. [*Id.* at ¶ 39] On October 6, 2016, Thomson Reuters terminated Plaintiff's employment, because it "did not have a sales position for an employee who could not perform sales." [*Id.* at ¶¶ 41-42]

Defendants denied Plaintiff's claim for short-term disability benefits on the basis that (1) he did not meet the definition of disability under the plan; and (2) Plaintiff's disability was "caused by, contributed to by, or resulting from an occupational sickness." [*Id.* at ¶¶ 45-46] On March 21, 2017, Plaintiff filed a lawsuit against UNUM in the United States District Court for the District of Colorado (the "District of Colorado") and a separate lawsuit against Thomson Reuters in Boulder County District Court. [#23 at 2] On April 20, 2017, Thomson Reuters removed the state court case to the District of Colorado. [*Id.*] On June 28, 2017, the Court consolidated the two lawsuits for all purposes. [*Id.* at 7] On January 3, 2018, Plaintiff filed his Amended Complaint against Thomson Reuters, asserting claims for breach of contract, violation of the Colorado Wage Act, Colo. Rev. Stat. § 8-4-101, *et seq.*, and civil conspiracy. [#55]

The Scheduling Order issued by this Court applicable to the consolidated cases set February 26, 2018 as the deadline for the disclosure of affirmative experts and March 26, 2018 as the deadline for the disclosure of rebuttal experts. [#27 at 11] On February

26, 2018, Plaintiff served Thomson Reuters with his Expert Disclosures, which disclosed Helen Woodard, M.A., as an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2)(B). [#91-1 at 11] Plaintiff provided Thomson Reuters a copy of Ms. Woodard's report, which is dated July 19, 2017, with the disclosures.[3] [*Id.*; *see also* #91-2] According to her report, Ms. Woodard, who is a Rehabilitation Counselor, was asked to provide "an opinion regarding [Plaintiff's] ability to return to his usual work." [#91-2 at 1] Ms. Woodard's report consists of (1) a summary of Plaintiff's work history; (2) a summary of Plaintiff's medical records; (3) a summary of Plaintiff's employment records and earnings history; (4) a summary of Thomson Reuters' disability policy and the records specific to Plaintiff's claim for disability; (5) a summary of Ms. Woodard's "Labor Market Research;" (6) a summary of Ms. Woodard's interview with Plaintiff's wife; (7) a summary of Ms. Woodard's discussion with Plaintiff about his current status; and (8) a discussion of Ms. Woodard's opinions in this case, consisting of six paragraphs and approximately one single-spaced page of text. [#91-2] Ms. Woodard opined that (1) Plaintiff would "likely not be able to successfully return to the job of being a salesman such as he has done in the past, given how the work is typically performed" and (2) "less demanding sales jobs pay 30% to 50% less than what [Plaintiff] was making at Thom[son] Reuters." [*Id.* at 34-35]

On April 2, 2018, counsel for Thomson Reuters sent counsel for Plaintiff a request for "the facts or data relied upon [by Ms. Woodard] with respect to her labor market research." [#91-4] On June 18, 2018, Plaintiff responded by providing a supplemental

---

[3] In his response to the Motion, Plaintiff points out that Ms. Woodard's report previously was provided to Thomson Reuters on September 15, 2017 with Plaintiff's initial disclosures. [#94 at 1]

disclosure consisting of a document from the United States Bureau of Labor Statistics website describing various facts about retail sales workers and customer service representatives (the "Bureau of Labor Statistics Web Pages"). [#91 at 3; #91-3] Plaintiff acknowledges that Ms. Woodard "did not keep a copy of what she originally looked at" when drafting the "Labor Market Research" section of her report and that the Bureau of Labor Statistics Web Pages provided had been updated since Ms. Woodard drafted her report. [#94 at 3]

On July 18, 2018, Thomson Reuters filed the instant Motion seeking to exclude the testimony of Ms. Woodard based upon Plaintiff's failure to disclose her "labor market research." [#91] Plaintiff responded on July 30, 2018, arguing that Ms. Woodard's report is largely based upon her experience and Thomson Reuters' own description of Plaintiff's sales position. [#94] On August 13, 2018, Defendant filed its reply in support of the Motion [#95] and, on August 29, 2018, this Court heard oral argument on the Motion [#98].

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2) provides, in relevant part:

(A)  *In General.*  In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B)  *Witnesses Who Must Provide a Written Report.*  Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.  The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

5

    (iii) any exhibits that will be used to summarize or support them;

    (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

    (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

    (vi) a statement of the compensation to be paid for the study and testimony in the case.

The Advisory Committee Notes to the 2010 Amendments to Rule 26(a)(2)(B) explain that the obligation for an expert to provide the "facts or data considered" by the expert witness in forming her opinions "extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." The Advisory Committee Notes further advise that the term "facts or data" should be "interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients."

  Federal Rule of Civil Procedure 37(c) states, in relevant part, that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir.1999) (quotation omitted). The Tenth Circuit has identified the following four factors for the Court to consider in determining whether the failure to disclose is substantially justified or harmless: (1) the prejudice or surprise to the

6

party against whom the testimony is offered; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the non-disclosing party's bad faith or willfulness. *Id.*

## III. ANALYSIS

There is no dispute that Plaintiff disclosed Ms. Woodard as an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) and thus that Ms. Woodard was required to provide an expert report that contained "the facts or data considered by [her] in forming" her opinions pursuant to Rule 26(a)(2)(B)(ii). [#91-1 at 11] Plaintiff appears to acknowledge that Ms. Woodard has not complied with this requirement as he concedes that Ms. Woodard "did not keep a copy of what she originally looked at" when preparing her report and that the Bureau of Labor Statistics Web Pages that were subsequently provided had been "updated" since Ms. Woodard provided her report. [#94 at 3] At the hearing, Plaintiff's counsel further explained that Ms. Woodard did not print the material she consulted at the time she prepared her report.[4] [*See* #98]

Pursuant to Rule 37(a), the Court thus must determine whether Plaintiff's failure to disclose the facts or data considered by Ms. Woodard was substantially justified or is harmless. Plaintiff fails to offer any justification for the failure other than to state that Ms. Woodard "did not keep a copy" of the labor market research she considered when she

---

[4] Despite these concessions, Plaintiff contends in his response to the Motion that "Plaintiff produced all the data that [Ms.] Woodard reviewed" and "there has been no failure to disclose anything reviewed by [Ms.] Woodard." [#94 at 4, 5] Even absent Plaintiff's representations to the contrary in the response and at the hearing, the Court would not find these bald assertions credible. For example, in the Labor Market Research section of her report, Ms. Woodard states that "[o]f people who feel stressed from work, 77% reportedly suffer physical symptoms and 73% suffer from psychological symptoms. Research has shown that when an individual suffers from stress, they are unable to utilize previous knowledge or training." [#91-2 at 30] These specific percentages appear to have been derived from research results considered by Ms. Woodard when preparing her report that have not been provided to Thomson Reuters.

7

prepared her report.  Plaintiff further tries to shift the blame to Thomson Reuters for waiting over six months after Ms. Woodard's report was first disclosed with Plaintiff's initial disclosures to request the supplemental material.  [#94 at 1-2]  Neither provides any justification, let alone a substantial one, for Plaintiff's failure to comply with the clear requirements of Rule 26(a)(2)(B)(ii).

To determine whether Plaintiff's failure to disclose the facts or data considered by Ms. Woodard is harmless, the Court considers the four *Woodworker's* factors. *Woodworker's Supply, Inc.*, 170 F.3d at 993; *Ortega v. City & Cty. of Denver*, No. 11-CV-02394-WJM-CBS, 2013 WL 1751944, at *2 (D. Colo. Apr. 23, 2013).  Although Thomson Reuters identified and considered the *Woodworker's* factors in its Motion [#91 at 6-8], Plaintiff failed to expressly address the factors in his response [#94].

**A. Prejudice to Thomson Reuters**

Thomson Reuters argues that Plaintiff's failure to disclose the facts or data considered by Ms. Woodard prejudices it, because it "cannot effectively cross-examine Ms. Woodard without knowing or having access to the foundation for her opinions" and also by causing Thomson Reuters to incur unnecessary expense in trying to obtain the materials and in bringing the instant Motion.  [#91 at 7]    Thomson Reuters also notes that, if Ms. Woodard is permitted to testify, it may require Thomson Reuters to seek time to supplement its own expert disclosures.  [*Id.* at 8]

Plaintiff argues that Ms. Woodard's opinions are not based upon any labor market research, but rather are based upon "her 48-years of experience and knowledge as a vocational rehabilitation counselor" and "Thomson Reuter's job description for Plaintiff's job."  [#94 at 3, 4]  Plaintiff's counsel, however, fails to provide an affidavit from Ms.

Woodard confirming this representation, which appears to be contradicted by the report itself. For example, Ms. Woodard's report contends that account managers—the position she identifies Plaintiff as having held with Thomson Reuters—"should have a bachelor's degree in area of specialty and at least five years of experience in the field or in a related area" [#91-2 at 30], whereas the referenced job description states only that a bachelor's degree, without reference to any specialty, is "highly preferred" and the applicant should have three to five years of professional direct sales experience [#94-1]. Similarly, Ms. Woodard's report contends that travel is generally 20 percent to 50 percent of the account manager's job [#91-2 at 30], whereas the Thomson Reuters' job description states only that "[t]ravel to client meetings is required," including overnight stays [#94-1]. Ms. Woodard's reference to precise numbers of years and percentages suggests that she considered labor market research that has not been disclosed, rather than just her own experience, when preparing this portion of her report.

In addition, Ms. Woodard's report expressly states that "[o]ur labor market research shows that less demanding sales jobs pay 30% to 50% less than what [Plaintiff] was making at Thom[son] Reuters." [#91-2 at 35] Plaintiff's counsel contends that Ms. Woodard calculated these percentages by "compar[ing] the labor department statistics with Plaintiff's pay" and that the statement also is "generally based on her experience." [#94 at 3-4] Once again, Plaintiff provides no affidavit from Ms. Woodard to support this statement and, regardless, Plaintiff concedes it has not produced the version of the labor department statistics that Ms. Woodard actually consulted when drafting her report.[5]

---

[5] Nor has Plaintiff sought leave to serve Defendants with a revised expert report utilizing only the disclosed data.

Moreover, even to the extent Ms. Woodard did not actually rely upon the labor market research to reach her conclusions (which, for the reasons stated, seems unlikely), the Advisory Committee Notes to the 2010 Amendments to Rule 26(a)(2)(B) make clear that the term "facts or data" should be interpreted "broadly" and that the rule requires the disclosure of *all* of the facts or data considered by the expert witness in forming her opinions, "not only those relied upon by the expert."

The Court thus finds that Plaintiff's failure to disclose the facts or data relied upon by Ms. Woodard would prejudice Thomson Reuters, because it prevents Thomson Reuters from evaluating and challenging the facts or data relied upon by Ms. Woodard in reaching her conclusions. Thomson Reuters thus would be unable to effectively and efficiently cross-examine Ms. Woodard at a deposition or at trial. The failure to disclose this material also may prevent Thomson Reuters' own experts from effectively and efficiently responding to Ms. Woodard's opinions.

### B. Ability to Cure the Prejudice

The Court next looks to whether this prejudice may be cured. Over six months have transpired since Thomson Reuters first notified Plaintiff's counsel that Ms. Woodard failed to disclose the facts or data she considered in forming her opinions, and Plaintiff still has neither (1) disclosed the facts or data; nor (2) sought leave to serve a revised report based only upon currently available facts and data.[6] At the conclusion of the Motion Hearing on August 29, 2018, the Court gave Plaintiff "one week to file any

---

[6] The Court does not imply by this reference that any such motion would have been granted; only that this potential method of limiting the prejudice to Thomson Reuters has not been pursued by Plaintiff.

supplement" if Plaintiff was able to locate supplemental material considered by Ms. Woodward. No supplement has been filed.

Although Plaintiff suggested in his response to the Motion and at the Motion Hearing, that many of Ms. Woodard's opinions are based solely upon her own experience and/or Thomson Reuters' job description for Plaintiff's position, Plaintiff has not offered a revised version of the report that is limited to these opinions. Moreover, it appears clear to the Court that Ms. Woodard's "Labor Market Research" permeates the opinions contained in the six-paragraph "Discussion" section of her report. [*See* #91-2 at 34-35] For example, Ms. Woodard's opinion that Plaintiff's "perception of himself as being less able to pay attention in meetings and to maintain focus when he was having difficulty in managing his health issues . . . are [sic] likely accurate, as these are known effects of stress" appears related to Ms. Woodard's observation in the "Labor Market Research" section that "[r]esearch has shown that when an individual suffers from stress, they are unable to utilize previous knowledge or training." [*Id.* at 30, 34] Moreover, several of Ms. Woodard's opinions relate to her conclusion that Plaintiff will be unable "to successfully return to the job of being a salesman . . . given how the work is typically performed." [#91-2 at 34] Because these opinions extend beyond Plaintiff's specific prior sales position with Thomson Reuters to all sales positions, Ms. Woodard's opinions appear to be based upon market research beyond Thomson Reuters' job description for Plaintiff's position.

Plaintiff thus has not offered any viable method for curing the prejudice to Thomson Reuters, and the Court is unaware of one that would not involve significant and unacceptable delay and cost.

### C. Disruption to the Trial

Trial of this matter is set for a two-day bench trial commencing on February 26, 2019. [#99] Thomson Reuters contends that the trial of this matter would be disrupted by allowing Ms. Woodard to testify, because, depending on Ms. Woodard's testimony on cross-examination, Thomson Reuters "may need to seek a continuance to study this data and have its witnesses be prepared to address it." [#91 at 8] The Court does not find this argument persuasive; Plaintiff's counsel, after consultation with Ms. Woodard, has already represented that no additional facts or data considered by Ms. Woodard in forming her opinions is currently available. Moreover, any such disruption to the trial could be avoided by permitting Thomson Reuters to take Ms. Woodard's deposition in advance of the trial. The Court thus finds that there is not a substantial risk of disruption to the trial and steps likely could be taken to militate against any potential disruption.

### D. Bad Faith or Willfulness

Regarding the final factor, Thomson Reuters argues that Plaintiff's conduct was willful and not in good faith, because Plaintiff's responses to Defendant's request for the undisclosed information was delayed and, ultimately, Plaintiff provided a document that was not actually considered by Ms. Woodard at the time she drafted her report. [#91 at 8] The Court does not find any evidence of outright bad faith or an intention to deprive Thomson Reuters of the information. Instead, it appears that that there was a lack of diligence to ensure compliance with the clear mandates of Rule 26(a)(2)(B), "which the Court cannot encourage." *Young v. Brock*, No. 10-CV-01513-WJM-CBS, 2014 WL 788036, at *3 (D. Colo. Feb. 27, 2014). The Court thus finds this factor neutral. *Id.*

### E. Weighing of the Factors

Weighing all the factors, the Court finds that Ms. Woodard's testimony should be excluded pursuant to Rule 37(c). Despite having over six months to remedy his failure to make the disclosures required pursuant to Rule 26(a)(2)(B)(ii), Plaintiff still has not located the undisclosed material or offered a substitute version of the report devoid of references to the undisclosed materials and the opinions derived therefrom. Given the significant prejudice that Ms. Woodard's testimony would cause Thomson Reuters and the lack of any reasonable measure to cure it, the Court finds it appropriate to exclude Ms. Woodard's testimony. *See Cohlmia v. Ardent Health Servs.*, LLC, 254 F.R.D. 426, 434 (N.D. Okla. 2008) (granting motion to strike expert reports that failed to comply with the requirements of Rule 26(a)(2)(B) and declining the offer party's request to supplement the reports with the required information).

## IV. CONCLUSION

For the foregoing reasons, this Court respectfully **RECOMMENDS** that Thomson Reuters' Motion [#91] be **GRANTED** and that the Court **EXCLUDE** the testimony of Helen Woodard pursuant to Federal Rule of Civil Procedure 37(c)(1).[7]

---

[7] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-

DATED: October 25, 2018               BY THE COURT:

                                      s/Scott T. Varholak
                                      United States Magistrate Judge

---

80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).